We're going to move now to Appeal 22-2902, Corey Lange v. Anchor Glass Container Corporation. We're going to begin with oral argument for the appellant from Mr. Im. Thank you, Your Honor. May it please the Court, Stephen Im on behalf of Plaintiff Appellant Corey Lange. If you tell the truth, you don't have to remember what you said. That, I believe, Your Honors, is the theme of this case. The defendant appellee has had multiple occasions in multiple different fora in which to explain the reason it did not hire my client, Mr. Lange, as a selector packer at its facility. The defendant could not remember what it said the first time it explained its refusal to hire Mr. Lange. And so the second time, when asked why it didn't hire Mr. Lange, it told a wildly different story, and I use that word wildly advisedly. If the defendant was telling the truth about the reasons it did not hire Mr. Lange, it would have told a consistent story because the truth doesn't change. But the defendant did not tell a consistent story. Excuse me, it told a wildly different story. And a reasonable jury, Your Honors, a reasonable jury could find from that radically changing explanation or story the defendant was offering, can find that their explanation is not credible. And combine that with the fact of plaintiff's prima facie case, conclude that plaintiff's race was, in fact, the reason that he was not hired. I want to emphasize some of the biggest changes that the defendant made. In the first, its first opportunity to explain why it didn't hire my client was when it was responding to her charge before the Equal Opportunity Commission, Equal Employment Opportunity Commission. At that time, in consultation with its hiring manager, Katie Petty, that name is important. In consultation with Ms. Petty at that time, the defendant said that my client wasn't hired because he had a criminal conviction. So, Mr. Eames, I understand that Ms. Petty, at her deposition, disavowed any participation in the response, in preparing the response to the EEOC charge. Now, I understand that Ms. Petty was basically the only HR representative there at the company. But what are your best facts to support this inference that you want us to draw that Ms. Petty was involved in the preparation of that response? And then secondly, does it matter? I think it matters intensely, Your Honor. And the best evidence is that the defendant itself said that Ms. Petty was involved. The defendant itself, in its position statement to EEOC, specifically refers to information that is being funneled to them or given to them by Ms. Petty. And among that included in that position statement is the statement not once, not twice, but three separate times. Three separate times, Your Honor, that my client was not hired for the position of selector packer because of his criminal conviction. They went from that, Your Honor, that triple statement in their position statement to telling the district court, quote unquote, it had nothing to do. The criminal conviction had nothing to do. That is a direct quote from Ms. Petty's declaration to the district court in support of the motion for summary judgment, that it had nothing to do with the decision not to hire. So they literally went from saying it was the reason to saying it had nothing to do with the reason for not hiring him. But that's just the beginning. The defendant originally told the Equal Employment Opportunity Commission that the same Ms. Petty did not attend any of the in-person interviews with any of the candidates for the positions. They went from that, Your Honors, to saying that Ms. Petty actually attended nearly every single in-person interview for the position. They went from stating to the Equal Employment Opportunity Commission that they only made hiring decisions after a second round of phone interviews with the best candidates, to Ms. Petty stating under oath in the district court that she made the decision before my client even had his in-person interview. Again, if you tell the truth, you don't have to remember what you said. My client made a mistake many years ago, a serious mistake, a mistake for which he paid. But he turned his life around. He started a family, and he established a very stable work history. He had been with his previous employer for five years before applying for employment with Anchor Glass. The record shows, Your Honor, that the defendant was willing to forgive white applicants who had criminal records and who gave to them for employment. All my client was asking for was the same consideration. Time and time again in the previous years leading up to my client's application, the defendant hired white applicants with serious criminal backgrounds of which they were aware. One of these individuals, by the way, lied on his application about even having a criminal record. But then along comes my client in 2018, and suddenly he's not hired in spite of his criminal background. Mr. Ginn, you don't dispute that in his application he made a misrepresentation about previously working for them, correct? That's correct, Your Honor. Your position is just that wasn't before them at the time they made the hiring decision? It's the defendant's position that it wasn't before them. It's the defendant's own position in the, again, in their position statement to the Equal Employment Opportunity Commission, that they were not aware of his prior employment until after he had been turned down for employment and after he filed his charge of discrimination. So it obviously could not have had anything whatsoever to do with the decision to not hire him. But that didn't prevent the defendant, Your Honor, from claiming that it did later on in spite of the initial statement to EEOC that this was not part of the hiring decision. We didn't even know this at the time of the hiring decision. When they got to the district court, they tried to claim that it was a reason for his not being hired in spite of the fact that the record shows it simply could not have been. So, and the worst part about this, Your Honors, is that none of the reasons that they've given over time are credible. The first reason they gave, we didn't hire him because of his criminal conviction. That turned out not to be credible because we did discovery and we found out that, hey, wait a minute, you guys are hiring white applicants all the time with criminal convictions. So that's when they shifted. I'm sorry to interrupt. With regard to the white applicants who were hired previously, say Mr. Allen, for example, is an example. During her deposition, I think Ms. Petty says that she recognizes that he was hired, that he had his prior conviction, and that his prior conviction did not appear on his application. And then she goes, but I didn't hire him. It was someone else. What weight, if any, should we give to that fact, which I take it undisputed? To the fact that Ms. Petty was not involved in the hiring of Mr. Allen? Yes. I think the court should give absolutely no weight to that fact, Your Honor. First of all, this is not a situation where we're talking about a decision maker making a decision about two different people. We're talking about the situation where Ms. Petty herself and the defendant itself keeps radically shifting their explanation for why they didn't hire my client. The point of the matter is that this employer had a policy that permitted it to hire individuals with criminal convictions, even with felony criminal convictions. That was the policy before Ms. Petty. That was the policy under Ms. Petty. In fact, that's what Ms. Petty herself said. The policy never changed. I was applying the same policies that existed before I became the hiring manager. But in my client's case, all of a sudden it made a difference in spite of the fact that it hadn't before. I see I'm running short on time. If Your Honor's would permit, I'd like to… One question, and we'll grant you some rebuttal time, Mr. M. Thank you. To confirm a procedural matter, the case was heard in the Southern District of Indiana. Judge Miller was sitting by designation. Is that correct? That's right, Your Honor. And there was no oral argument? The matter was resolved on the papers? There was an oral argument. There was an oral argument? Yes, Your Honor. Did that take place in the New Albany Division before Judge Miller? Yes, Your Honor. All right. Thank you. And you will have some time for rebuttal. Thank you, Your Honor. We'll now move to an argument from the appellee, Mr. Haase. Thank you, and good morning, and may it please the Court. Good morning. The District Court's carefully reasoned 14-page decision granting summary judgment in Anchor Glass's paper was correct. Human Resources Specialist Katie Petty made the decision on which of the three applicants to select for the open packer positions. Ms. Petty made her three selections initially before she interviewed Mr. Lange. She was impressed by those three candidates' work history, secondary education, and interview performance. Company employees other than Ms. Petty, who conducted screening interviews, had a fourth candidate, Mr. Lange, that they thought Ms. Petty should interview. Ms. Petty said she would do that and see if the interview changed her mind. Mr. Lange's interview did not change her mind. In fact, there were two particular negatives in this interview. First, Ms. Petty discussed that swing shift scheduling would apply, and Mr. Lange indicated that he understood based on his prior work at Anchor Glass. In the process of doing that, he revealed the fact that his statement on his application, that he had never worked for Anchor Glass in the past, was false. Is it Haas or Hassi? Hassi. Hassi. Was Ms. Petty involved in preparing or reviewing the response to the EEOC that was filed on September 4, 2018? We're not actually aware of any particular involvement. We know that she did not see it, did not review it before it was filed, whether at any point in the process somebody asked her something that they relayed. We don't have information on the record on that. Was she the only HR person at the company at the time? No, she was not. There were other people, including the people who did these other interviews. So I don't know if they asked her questions, and then like the telephone game, the details get mixed up in transition.  And we have no information to believe that that is incorrect. The second issue that came up during the interview, which was a negative in Ms. Petty's mind, was the discussion of Mr. Lange's prior criminal felony conviction. Ms. Petty testified that Mr. Lange commented that next time he would not sell to an undercover cop. Mr. Lange now denies making any such statement. The district court found that Mr. Lange's deposition testimony precluded that denial. But in any event, Mr. Lange admitted that the issue was discussed at his interview and that Ms. Petty said, quote, that there will be an issue that I had a felony, close quote, and, quote, that they wasn't going to hire people with that kind of background, close quote. But how does that square with what she put in her declaration, that his prior felony conviction had nothing, or their decision not to hire him had nothing to do with this felony conviction? From Ms. Petty's view of things, she had picked from three people that she liked, and she said, these people are good, I want to hire them, I should talk to this guy, sure, I'll hire him. Even if there was no conviction, she still was not so blown away that she decided to hire this person over the people that she had interviewed before. So from her perspective, from the HR perspective, she doesn't think in alternative arguments worlds. She's like, that's why I didn't hire him. But the problem is, and the district court's opinion doesn't really address this, is in the initial response to the EEOC, they said they didn't hire him, that his felony conviction disqualified him. Which is completely inconsistent with other parts of the record. I actually, and with respect to counsel, I think he has greatly overstated what we said in our position statement. Our position statement says at page one that Mr. Lange was, quote, less qualified due in part to his criminal conviction. So in part implies there's something else going on. Page three says, and I quote, in addition to the clean background check, each of the candidates hired had more post-secondary education than Mr. Lange, close quote. And page three also discusses the work experience of the selected candidates. So obviously if we're talking about those things, we think they matter somewhat. So I don't think it's fair to say that in our position statement we said this was only about the criminal conviction. That was certainly discussed extensively. Mr. Heston, on page three at the top, the end of that first partial paragraph says, based upon Mr. Lange's admission regarding his criminal conviction, Ms. Petty decided not to extend him an offer, and therefore did not run the criminal background check. I don't know how much more plain that statement could be. Well, it would be plain, except that unfortunately I hate to impeach my own client's position statement, but we said something a little different somewhere else. I mean, if that were it, there would be no discussion of the, on page three of each of these. But in summary judgment, you have to take everything in the light most favorable to the opposing side. So why isn't that sufficient? Well, that's where the court looked at the Lange case and looking at what is the real standard in what the company submits to the EEOC. Because keep in mind, this can't really be used to impeach Ms. Petty because she didn't read it. She didn't sign it. Obviously the goal is to make. I think the record might be a little unclear on whether or not she did. Again, an issue of fact. Even you yourself in response to Judge Lee's question when you stood up said essentially it wasn't clear. The record wasn't clear on that. We don't know. But the plaintiff has the ability to conduct discovery on more detail if they think that's necessary. A position statement, as we say on page one, and we always put this on there, that this is based on a preliminary investigation or is a result of an investigation to date. This is not intended to be used as evidence. The result reserves the right to modify. And the reason we say that is when we brief summary judgment, the parties have had the opportunity to have months of discovery, detailed depositions. The position statement is submitted very quickly and the facts are pulled together. So the disclaimer is there for a reason. It's not the same as making the statement in a sworn statement. And that's where we go back to the Lane case where the Seventh Circuit made discussions about what does one, what is the relevance of a statement in a position statement, and that the district court addressed I believe at page 13 of the district court's opinion that discussed the Lane case and why it felt that any, we call them refinements, expansions, even clarifications, maybe even corrections at later stages do not preclude summary judgment. Were it not the fact, if any misstatement in a position statement is going to preclude summary judgment, the EEOC is going to start getting one paragraph position statements because no company is going to stake out all these facts. As you stand here today, what was the reason they didn't hire him? I mean, I go with what Ms. Petty said, which was she had three candidates she liked better. At what point? Even before she met Mr. Lane, but technically I then have to say, well, after, because she said, well, I'll talk to this guy and see what he has to say. There's no evidence that Mr. Lane said anything that blew her away and made her think, wow, this guy's better than those other three people. But there is evidence that something that she claims Mr. Lane said disqualified him. I mean, Ms. Petty claims that Mr. Lane said that he would basically do it again, but not insult an undercover cop. And then when you look at her notes of that conversation, you would think that something that was that important to her that she later cites in a declaration, she would have noted somewhere in her notes of that conversation. But nowhere does that statement appear in her notes. Well, I mean, calling those notes of the conversation is maybe a generous characterization of her kind of scrawling on his resume. But she scrawled down other things, right? And she scrawled down the fact of the conviction. Right. And then, which she later says didn't really matter to her. But certainly, even in her own account, what he said about wanting or being willing to commit the crime again seemed very important to her. And again, that's nowhere in her notes. And so why isn't that a factual issue as well? Well, I mean, it strikes me that you take notes to remember what happened, and if it's very memorable, that's the reason you don't need to write it down. Oh, so you're saying that people don't – I guess I always thought that notes were to write down things that were significant that you do want to remember later. But I go back to the fact that from her perspective, from an HR person's perspective, her decision was I picked these three people, and this guy hasn't blown me away. I also look at the fact that we're splitting hairs a bit when we talk about the difference between a criminal conviction and what he said about the criminal conviction. These are not two separate issues. These are intertwined. Anytime you look at a criminal conviction of an applicant for a job, you want to look into what are the circumstances. And one of the circumstances is what does the person say about it now? So I don't think these are separate issues. These are just broader parts of the same issue. One additional point I'd like to make, because I know I'm late on time, is the misstatement on the application, the misrepresentation is alone a disqualifier to the plaintiff's case because – first of all, I don't think we can accept that it was not known at the time. I don't think that a statement, a position statement can be deemed to be the actual admission. But was that the basis they didn't hire him? In response to my question about why they didn't hire him, you didn't say the misapplication, misstatement on the application. So I guess I have two pieces of that, which is, one, from her perspective, he didn't blow her away. She already picked her people. But for lawyers that argue alternatively, but she had these other reasons, well, he was also disqualified for these other reasons. The other thing is, there's no prima facie case here, because to have a prima facie case and a job application case, you can't make a misrepresentation on the application and be a qualified applicant. Thank you very much, Mr. Haase. We appreciate your advocacy. Mr. M., we're going to go back to you, and we're going to please give you two minutes for rebuttal. I'm frankly astonished by the statement that what we've heard today is that Ms. Petty didn't hire my client because she was really impressed with the three other candidates that she hired. Your Honors, once again, the position statement, and by the way, Ms. Petty's name is all over the position statement. Ms. Petty observed, Ms. Petty notes, Ms. Petty saw, et cetera, et cetera, et cetera. She was, in fact, the only HR person who was at this particular facility at the time. She was clearly intimately involved in the preparation of the position statement. There's no other HR person or functionary who is referenced anywhere in the position statement. And that same position statement, Your Honors, specifically says Ms. Petty was not even present for any of the in-person interviews, any of them. And the defendant is now coming to court and saying, and in fact, tried to say this in the district court, I didn't hire Mr. Lang because I was really impressed with the in-person interviews of these three white applicants. Really? After telling EEOC you weren't even there, you're going to say, I didn't hire Mr. Lang because I was really impressed with the in-person interviews that the defendant previously said I wasn't even present at. Mr. Inman, does the record reveal how long Mr. Lang's brother had worked at the company? I believe it does, Your Honor. I'm sorry, I can't quote that at my fingertips. It was a lengthy period of time. And there was some interaction between Ms. Petty and Mr. Lang's brother with regard to his putative application. She agreed he should apply. Anything else in the record on that factual item? Well, I thought it was important, Your Honor, that Ms. Petty tried to deny it. In fact, again, in her declaration claim, she had no idea what my client's race was when we established during the course of discovery that she knew my client's brother and had several interactions with him and knew that my client's brother wasn't white. So obviously, again, calling into question Ms. Petty's credibility. On the issue of prima facie case and whether or not my client was qualified, the defendant sure considered him qualified when they stated he was among their top four candidates. After reviewing his resume and having his interview, they certainly considered him qualified. I don't see how we can't say there's an issue of fact as to whether or not my client was qualified for his position. Thank you, Mr. M. I will note, for the record, I did locate that transcript of a Zoom call that occurred with Judge Miller, docket entry 97, where he does make reference to his summary judgment procedure, and apparently there was some argument at that hearing. And then, of course, we have the written opinion as part of the appendix, correct? Correct, Your Honor. Very good. Thank you, Mr. M. Thank you, Mr. Haase. The case will be taken under revisement.